| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, assignee and successor in interest by assignment from PNC BANK NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>DAVID SADEK, ETTY SADEK, et al.,<br><br>Defendants. | Civ. No. 11-1302 (KM) (MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Before me are cross-motions for summary judgment by plaintiff First American Title Insurance Company ("First American") and defendant David Sadek, who has filed in bankruptcy. This action arises from a nearly seven year dispute over the sale of a house in Teaneck, New Jersey in 2006 and the use of the proceeds thereafter. First American, standing as assignee of all the rights, interests, and claims held by PNC Bank National Association ("PNC"), sues David Sadek and Etty Sadek for those proceeds, as well as interest, costs, and other relief. First American moves for summary judgment on its claims for fraud (Count II) and conversion (Count V), as well as a determination barring the discharge in bankruptcy of such a judgment against the Sadeks. David Sadek moves for summary judgment on the same two counts. For the reasons set forth in this opinion, I will deny both sides' motions for summary judgment on Count II (Fraud) and dischargeability, but will grant First American's motion for summary judgment as to Count V (Conversion).

# I. Summary of Facts[1]

Mr. Sadek was the primary shareholder, President, and CEO of First Financial Equities ("FFE"), a mortgage banking firm located in Englewood, New

[1] Record items cited repeatedly will be abbreviated as follows:

| | |
|---|---|
| 2AC | Second Amended Complaint (ECF No. 93) |
| Pl. Br. | (First American's) Memorandum of Law in Support of Motion for Summary Judgment Against Defendant David Sadek and Etty Sadek (ECF no. 199) |
| Pl. R. 56.1 Stmt. | Plaintiff's Rule 56.1 statement (ECF no. 199) |
| Def. Opp./Br. | Memorandum of Law in Response to Plaintiff, First American Title Insurance Company's Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment Against Plaintiff First American Title Insurance Company (ECF no. 207) |
| Pl. Reply/Opp. | Reply Memorandum of Law in Further Support of Motion for Summary Judgment Against Defendants David Sadek and Etty Sadek and in Opposition to David Sadek's Cross-Motion for Summary Judgment (ECF no. 210) |
| Def. Reply | Memorandum of Law in Response to Plaintiff, First American Title Insurance Company's Motion for Summary Judgment and Reply in Further Support of Defendant David Sadek's Cross-Motion for Summary Judgment Against Plaintiff First American Title Insurance Company (ECF no. 213) |
| Def. R. 56.1 Stmt. | Defendant's Rule 56.1 Statement, submitted with Def. Reply (ECF no. 213) |
| Def. R. 56.1 Counterstmt. | Defendant's Rule 56.1 Responsive Statement of Counter Material Facts (ECF no. 213) |

Initially, Mr. Sadek did not file a response to First American's Local Rule 56.1 Statement or a Statement of Material Facts on his own behalf. First American argues that all the facts in its statement should be deemed undisputed. (Pl. Reply/Opp. at 7–8.) In his most recent submission, Mr. Sadek filed both documents. (*See* Def. Reply.) While adherence to the local rules is important in promoting fairness in cases before the Court, cases generally should be decided on the merits and not on technicalities. *Cf. Becker v. Smith & Nephew, Inc.*, No. 15-2538, 2015 WL 4647982 (D.N.J. Aug. 5, 2015) (stating that the Third Circuit liberally permits pleading to ensure that claims are "decided on the merits rather than on technicalities"). What is disputed between the parties was clearly manifested in the briefing, and I do not perceive any prejudice to First American. I will exercise my discretion to allow the late submission of the Local Rule 56.1 Statements.

Jersey. (Pl. R. 56.1 Statement, Def. R. 56.1 Statement ¶¶ 4, 8.) FFE originated mortgage loans and sold them on the secondary market. (*Id.* ¶ 6.) FFE used Winthrop Abstract of New Jersey, LLC ("Winthrop-NJ") to perform the title searches for a significant amount of loans. (*Id.* ¶¶ 14, 20.) Ms. Sadek and Rachel Sadek, Mr. Sadek's mother, both held positions at Winthrop-NJ, and Mr. Sadek received a share of revenue from its New York counterpart, Winthrop Abstract, LLC ("Winthrop Abstract"). (*Id.* ¶¶ 16, 18–19.) In addition, Mr. Sadek controlled FFE and, in 2005, he used FFE to extend and fund more than 30 loans to himself, approximately $15 million in total. (*Id.* ¶¶ 9, 10.) He admitted that if he wanted a personal loan from FFE, he was able to obtain it. (*Id.* ¶ 11.)

In October 2005, the Sadeks owned a single family home, where they resided, at 374 Winthrop Road in Teaneck, New Jersey. (*Id.* ¶¶ 21, 23.) At that time, there were two recorded mortgages encumbering the property, one held by Summit Bank and one held by Chevy Chase Bank, FSB. (*Id.* ¶¶ 24–26). Mr. Sadek applied for another loan in the amount of $792,000 from FFE in order to refinance the loans on that property. (*Id.* ¶¶ 28, 32.) The title search for the refinance was performed by Winthrop Abstract. (*Id.* ¶ 29.) Mr. Sadek signed the promissory note on October 31 and does not dispute that mortgage was "[p]repared by [him]." (*Id.* ¶¶ 33–34.) That loan was then sold by FFE to National City Bank ("National City"); however, the mortgage held by National City went unrecorded. (*Id.* ¶ 37, 40.)

On March 2, 2006, the Sadeks sold their home to Daniel and Tsipora Gurell, a little over four months after the refinance on the property had closed. (¶ 41, 43.) Mr. Sadek did not disclose to PNC or National City the sale of the property. (¶ 49.) The proceeds of the sale, totaling $588,806.22, were deposited into the Sadeks' bank account, instead of being used to pay off the outstanding loan with National City. (¶¶ 53, 56.) Mr. Sadek does not dispute that these amounts were due and owing. He entered into a Consent Judgment with PNC for the amount of the loan plus interest that had accrued, which resolved

Count I (Breach of Contract) of the Second Amended Complaint. (*Id.* ¶¶ 65–67; 2AC ¶ 36 *et seq.*).

Although much is in dispute between Mr. Sadek and First American, what is disputed can be boiled down to a few core issues. First, Mr. Sadek disputes that it was his or FFE's obligation to record the mortgage for the refinancing loan with National City. (Def. R. 56.1 Stmt. ¶ 36.) Second, Mr. Sadek disputes that he *knowingly* failed to disclose the existence of the loan or the mortgage to the Gurells. (*Id.* ¶ 44.) Third, Mr. Sadek disputes his attendance at and personal knowledge of the closing, his awareness that there were outstanding loans or unrecorded mortgages on the property, his knowledge that the funds should have been paid out to National City, and the allegation that he continued (or had FFE continue) to pay the loan for another two and a half years following the closing of the sale of the property. (*Id.* ¶¶ 51–53, 60.)

## II. Legal Argument

### a. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that the court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Hayes v. Harvey*, 874 F.3d 98, 103 (3d Cir. 2017). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence supporting the non-moving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's cases, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Additionally, when parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468–69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J. 1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Philadelphia Housing*

*Auth.*, 834 F. Supp. 2d 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes the facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determination" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

Furthermore, if a party fails to address the other party's properly supported assertion of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. L. Civ. R. 56(a). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for an entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

### b. Count II (Fraud)

First American's second count is a claim of fraud against David Sadek. (2AC ¶¶ 43–53.) First American seeks summary judgment in the amount of $995,048.21 (plus interest) on this count against Mr. Sadek, as well as a judgment in their favor that this debt is not subject to be discharged under the Bankruptcy Code, 11 U.S.C. § 523(a)(6). (Pl. Br. 9, 10.) Mr. Sadek responds that there are no facts to support a common law fraud claim and moves for summary judgment in his favor. (Def. Opp./Br. 5.)

A common law fraud action under New Jersey law has five essential elements: (1) a material representation by the defendant of a presently existing fact or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely on the statement; (4) reasonable reliance by the plaintiff; and (5) resulting damages to the plaintiff. *Avaya Inc., RP v. Telecom*

6

*Labs, Inc.*, 838 F.3d 354, 388 (3d Cir. 2016) (citing *Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 175 (2006)). The evidentiary standard for fraud is clear and convincing. That requires that the evidence be "so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the precise facts in issue." *Id.* (quoting *N.J. Div. of Youth & Family Servs. v. I.S.*, 202 N.J. 145, 168 (2010)).

In this case, neither side has met its burden to demonstrate the lack of a genuine, material issue of fact for purposes of summary judgment. There is a genuine factual dispute between the parties as to the second element of common law fraud: whether Mr. Sadek had knowledge of or a belief as to the falsity of the representations he made to PNC or National City. *Avaya*, 838 F.3d at 358. Mr. Sadek adamantly maintains that he "was a busy businessman" responsible for over 3,000 loans in one year and that he personally held somewhere from 40 to 60 notes with an estimated total liability of $15 million. (Def. Opp./Br. 11.) First American, noting that direct proof of intent (that is, the debtor's state of mind) is "nearly impossible to obtain," argues that it is allowed to "present evidence of the surrounding circumstances from which intent may be inferred." (Pl. Br. at 18 (quoting *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987).) It further points out that when such circumstantial evidence of the debtor's intent to deceive is produced the debtor cannot overcome that inference with an unsupported assertion of honest intent. (*Id.*) The focus, it says, is on whether the "debtor's actions appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor." (*Id.* 8–9 (quoting *In re Reynolds*, 193 B.R. 195, 200–01 (Bankr. D.N.J. 1996)).)

Considered in relation to proof at trial, First American's contentions have merit. There is no doubt that First American has put forward circumstantial evidence that Mr. Sadek committed common law fraud. For example, Mr. Sadek does not dispute that there was a close relationship between FFE and Winthrop-NJ, where members of his family worked (Pl. 56.1 Stmt., Def. R. 56.1

Stmt. ¶¶ 14, 20); that the money from the sale was deposited in his bank account (*Id.* ¶ 53); that he executed the mortgage (*Id.* ¶ 34); that the mortgage with National City went unrecorded (*Id.* ¶ 39); or that the loan continued to be paid by FFE (*Id.* ¶ 60).

However, Mr. Sadek, citing his own deposition testimony under oath (Pl. Br., Haupel Decl., Ex. N.), counters this evidence with his own evidence that FFE was a large concern that dealt in a large number of loans and mortgages (Def. R. 56.1 Counterstmt. ¶¶ 1–7); that he was not a member or involved in the day-to-day operations with Winthrop-NJ (Def. R. 56.1 Stmt., at 11 ¶ 17); that he was not aware that the loan had not been paid (*Id.* at 11 ¶ 56); and that he never personally advised his employee at FFE to continue paying the loan (or even knew that FFE continued to pay it) for two and a half years (*Id.* at 11 ¶ 60). First American states that this is all self-serving and implausible, and a jury would be entitled to be skeptical of the kind of inadvertence that results in a substantial financial gain. But to weigh the evidence and conclude that Mr. Sadek did or did not knowingly perpetrate a fraud would exceed the bounds of the summary judgment standard.

My role here is not to evaluate the credibility of the evidence but to determine whether there is a genuine issue of fact for trial. *Anderson*, 477 U.S. at 248, 249. As to the second element of common law fraud, there is. Both sides' motions for summary judgment on Count II are denied.

### c. Count V (Conversion)

First American's fifth count is a claim of conversion against David and Etty Sadek. (2AC ¶¶ 69–74.) First American seeks summary judgment in the amount of $995,048.21 (plus interest). (*See* Pl. Br. 9.) Mr. Sadek cross-moves for summary judgment, arguing that there are "no material facts to support a claim of conversion." (Def. Opp./Br. at 7.)

Conversion under New Jersey law is essentially "the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *Peloro v. United States*, 488

8

F.3d 163, 173–74 (3d Cir. 2007) (quoting *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990)). It breaks down to three essential elements: (1) wrongful exercise of dominion or control over the property of another; (2) the taking of property without authorization; and (3) that the taking was to the exclusion of the owner's rights to that property. *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753 (D.N.J. 2013) (citing *78th Infantry Div., World War II Living History Ass'n v. Oprendek*, No. 11-165, 2011 U.S. Dist. LEXIS 1400014, at *15–16 (D.N.J. Aug. 4, 2011)). Conversion is an "intentional tort" in that "the defendant must have intended to exercise a dominion or control over the goods which is in fact inconsistent with plaintiff's rights." The intent requirement, however, is lower than that for fraud; the defendant need not "knowingly or intentionally act wrongfully for a conversion to occur." *Chicago Title Ins. v. Ellis*, 409 N.J. Super. 444, 454 (App. Div. 2009) (quoting *LaPlace v. Briere*, 404 N.J. Super. 585, 595, *certif. denied*, 199 N.J. 133, 200 N.J. 506 (2009). The defendant need not intend to harm the proper owner of the property or even know that the property belonged to that other person. *Id.* at 456.

The tort of conversion has evolved to apply to money and other financial instruments, so long as the plaintiff possessed an actual interest in the property and it is capable of being misused in a way that would deprive the plaintiff of its benefit. *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 432 (App. Div. 2011); *see also Chicago Title Ins.*, 409 N.J. Super. at 456 (discussing conversion in the context of money fraudulently obtained in connection with mortgages). It is essential that any money said to be converted have belonged to the injured party; an action for conversion will not lie for a mere debt. *Bondi*, 423 N.J. Super. at 432 (quoting *Advanced Enters. Recycling, Inc. v. Bercase*, 376 N.J. Super. 153, 161 (App. Div. 2005)). Where there is no present obligation to return the money, but only a debtor-creditor relationship, a claim of conversion will not lie. *Id.* Additionally, the converted funds must be

identifiable, and the injured party must establish that the tortfeasor exercised dominion over the money and repudiated the superior rights of the owner. *Id.*

There is no genuine dispute that the facts necessary to establish a claim of conversion have been established by this record. Indeed, in his most recent submission, Mr. Sadek concedes that "he exercised unauthorized dominion over the property of another in exclusion or denial of his rights or inconsistent therewith." (Def. Reply at 11.)[2]

New Jersey case law allows for money (in the form of proceeds from a mortgage sale) to form the basis of a conversion claim, and the relationship between the Sadeks and First American (standing in the shoes of the original lender) was not merely the relationship of a debtor and a creditor. *See Bondi,* 423 N.J. Super. at 432. The funds here are identifiable: they represent the discrete proceeds from the sale of a specific property. (Pl. Br. (56.1 Statement), Def. Reply (56.1 Statement) ¶¶ 53, 56.) Mr. Sadek did not incur a mere debt, but an immediate obligation to pay them over to PNC. By depositing the funds in his own bank account, Mr. Sadek exercised dominion over these identifiable funds and thereby repudiated the superior rights of PNC (now assigned to First American). (*Id.*) It is clear from the Promissory Note that should the Sadeks have sold or transferred their interest in the property without prior consent from the lender, the lender could have demanded immediate payment of the balance of the loan. (Pl. Br., Haupel Decl., Ex. B at 11.) This establishes PNC's interest in those funds and leaves no question that it could have requested the proceeds of the sale if it had received notice of the sale.

All three elements of the claim of conversion are established by the undisputed facts. I thus award summary judgment in favor of First American and against Mr. Sadek.

---

[2]     This may well be a strategic concession, made in the hope of confining the judgment to one that is dischargeable in bankruptcy. Such considerations do not sway the Court's summary judgment decision one way or another. Sadek also states that "he did mistakenly commit the tort of conversion." (Def. Reply 11) I take "mistakenly" to be consistent with the mental state requirement for conversion, but again, it is the evidence, not the word chosen by Mr. Sadek in his brief, that controls.

As against Etty Sadek, I reach the same conclusion. On July 31, 2017, I issued an Order to Show Cause (ECF no. 200) to both Mr. and Ms. Sadek, warning them that unless they filed an opposition within 21 days, the motion would be treated as unopposed. Although Mr. Sadek filed responding papers, Ms. Sadek did not respond in any manner. The Order to Show Cause warned that the motion could be treated as unopposed, but I will nevertheless analyze the record to determine whether there is a genuine, material issue of fact. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555 (D.N.J. June 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle [Defendant's] to judgment as a matter of law." (quoting *Anchorage Assocs.*, 922 F.2d at 175)).

As in the case of Mr. Sadek, First American has proffered enough evidence against Ms. Etty Sadek to warrant a grant of summary judgment for conversion in their favor. There is evidence that Ms. Sadek, along with her husband, executed the mortgage that refinanced the house. (Pl. 56.1 Stmt. ¶ 34.) Mr. and Ms. Sadek, as joint owners, sold the property with the unrecorded mortgage to the Gurells. (¶¶ 41–42.) There is evidence that Ms. Sadek knew of the existence of the mortgage and the loan, which were not disclosed to the Gurells. (¶ 46–47.) Finally, the proceeds of the sale were deposited into a bank account held by both Mr. and Ms. Sadek. They were not used to repay the outstanding balance of the loan, the existence of which Ms. Sadek had knowledge; rather, they were used to pay off an equity line of credit extended to Mr. Sadek. (¶¶ 52–59.) PNC rightfully expected to receive the proceeds from any sale of the property, and its rights were defeated by these actions. (¶ 57.)

This evidence establishes every element of the tort of conversion under New Jersey law. Ms. Sadek, together with her husband, took the funds without authorization and wrongfully exercised dominion and control over the funds, to the exclusion of the rights of PNC. *Jurista*, 492 B.R. at 453.

Therefore, I will grant summary judgment as to Count V (conversion) against both David and Etty Sadek.

### d. Dischargeability

First American moves pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6) to bar the discharge of this debt in bankruptcy.

Section 523(a) of the Bankruptcy Code enumerates several exceptions to the dischargeability of a debt. Quintessentially, a non-dischargeable judgment is one for fraud. Section 532(a) prevents the discharge of money obtained by "false pretenses, a false representation, or actual fraud," "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," and "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(2), (4), (6). Allowing discharge in these instances would run counter to the Bankruptcy Code's goal of offering a broad discharge to provide a fresh start to the "honest but unfortunate debtor." G-44 pt. 1 Collier on Bankruptcy (16th ed. 2017). Those exceptions to dischargeability are to be construed narrowly, however, and the creditor bears the burden of proving each element of the exception by a preponderance of the evidence. *Id.*

I have already found that Count II (fraud) presents issues of fact that must be tried. The issue of dischargeability, which depends on fraudulent intent, likewise must be tried.

Conversion falls short of fraud. Although conversion is an intentional tort, conversion is not automatically defined as a "willful and malicious injury" under § 523(a)(6). *In re Webb*, 525 B.R. 226, 233 (Bankr. M.D. Pa. 2015); *see also Jersey Cent. Power & Light v. Breslow*, No. 12-5425, 2013 WL 632124, at *2 (D.N.J. Feb. 20, 2013) ("Injury is 'willful and malicious' within the meaning

of § 523(a)(6) when an actor purposefully inflicts the injury or acts in such a manner that he is substantially certain that injury will result. . . . This implies that § 523(a)(6) requires a deliberate or intentional injury, not a deliberate or intentional act that merely happens to result in injury." (citations omitted)).

In determining whether an act of conversion is willful and malicious, consideration must be given to the circumstances of the conversion. The court must examine the debtor's state of mind at the time the debtor took the action that produced the injury. *Webb*, 525 B.R. at 233 (finding that the creditor failed to meet its burden of proof that debtor's actions were willful and malicious when the debtor claimed the proceeds of a life insurance policy after he executed a disclaimer that by reference included the proceeds); *see also In re DeCastro*, No. 14-15597/1581, 2015 WL 9777729, at *10 (Bankr. D.N.J. Nov. 25, 2015) (allowing discharge where creditor knowingly and willingly lent money and debtor did not acquire the funds without permission).

Under New Jersey law, conversion, though an intentional tort, does not (or at least does not necessarily) involve such wrongful or malicious intent. *See supra* Section II.c. What was undisputed as to Count V was that Mr. Sadek converted the proceeds of a sale of his house, proceeds that should have gone to PNC. *Id.* What was not decided was the nonessential issue of whether he accomplished that conversion knowingly, with the intent to harm or injure PNC. With respect to Count II, I found that the evidence conflicted as to Mr. Sadek's knowledge and state of mind, presenting an issue for trial. *See generally In re Glenn*, 470 B.R. 731, 739 (Bankr. M.D. Pa. 2012) (denying summary judgment for discharge where there was not "indisputable evidence that Debtors intended to injure [Creditor] or that they must have known that the injury was substantially certain to occur"). For the same reasons, I cannot find on summary judgment that the conversion was done with the heightened intent that would compel a finding of non-dischargeability.

The evidence on the issue of intent is not so one-sided that I can grant summary judgment. I will thus deny summary judgment on the issue of dischargeability, which must be tried.

### III. Conclusion

For the foregoing reasons, I will deny both First American's and Mr. Sadek's motions for summary judgment as to Count II of the Second Amended Complaint and the dischargeability of these debts in the bankruptcy proceedings. I will grant First American's motion for summary judgment as to Count V (conversion) against both David and Etty Sadek.

The matter will be referred to the Magistrate Judge so that it can be postured for trial. An appropriate order follows.

Dated: December 29, 2017

**Kevin McNulty**
**United States District Judge**